## U.S. BANKRUPTCY COURT
### District of South Carolina

Case Number: **11-04267-jw**

## ORDER ON MOTION TO EXPUNGE

The relief set forth on the following pages, for a total of 7 pages including this page, is hereby ORDERED.

**FILED BY THE COURT**
**02/13/2015**



*(signature)*

US Bankruptcy Judge
District of South Carolina

Entered: 02/13/2015

**UNITED STATES BANKRUPTCY COURT**

**FOR THE DISTRICT OF SOUTH CAROLINA**

| | |
|---|---|
| IN RE: | C/A No. 11-04267-JW |
| | Chapter 13 |
| Robert A. Deal, | **ORDER** |
| Debtor(s). | |

**ORDER**

THIS MATTER come before the Court upon a *pro se* Motion to Expunge Bankruptcy C/A Nos. 11-04267-JW and 11-05931-JW filed by Robert A. Deal ("Debtor"). This Court has jurisdiction over the matter pursuant to 28 U.S.C. § 1334. Pursuant to Rule 52 of the Fed. R. Civ. P., made applicable to this proceeding by Fed. R. Bankr. P. 7052, this Court makes the following Findings of Fact and Conclusions of Law[1].

**FINDINGS OF FACT**

1. On July 7, 2011, Debtor, acting *pro se*, filed a voluntary petition for relief under Chapter 13 of the Bankruptcy Code. This case was assigned C/A No. 11–04267–JW ("First Case").

2. On July 28, 2011, Debtor filed a motion to dismiss his First Case after receiving a short sale offer on his home. According to Debtor's testimony, dismissal was necessary for Bank of America to process the short sale. This Court entered an order granting dismissal on July 28, 2011 and the First Case was closed on August 2, 2011.

3. On September 26, 2011, Debtor, again acting *pro se*, filed a voluntary petition for relief under Chapter 13 of the Bankruptcy Code. This case was assigned C/A No. 11–05931–JW ("Second Case").

---

[1] To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such, and to the extent that any conclusions of law constitute findings of fact, they are so adopted.

1

4. Debtor's Second Case was dismissed on October 12, 2011 for failure to file the required schedules pursuant to Fed. R. Bankr. P. 1007(c), 1019–5(B), and 3015(b). Debtor's Second Case was closed on October 21, 2011.

5. On November 3, 2014, Debtor, once more acting *pro se*, filed this motion to expunge his First and Second Cases.

6. On November 25, 2014, a hearing was held regarding Debtor's motion to expunge. Debtor was well-spoken, sophisticated, and, as evidenced by his testimony about his work in the financial services industry, well-educated. At the hearing, Debtor testified that Bank of America provided him with misleading information regarding the short sale of his home in his prior cases. According to Debtor, this information induced him to file and ultimately effected the dismissal of his Cases. Debtor testified that he received a check from Bank of America in the amount of one-thousand dollars ($1,000), which the Court reasonably assumes to have been distributed in accordance with the National Mortgage Settlement. Debtor did not produce a copy of this check or other evidence supporting his claim of mortgage mishandling by Bank of America.

7. According to his testimony at the hearing, Debtor's First and Second Cases are listed by credit reporting agencies in conjunction with Debtor's identifying information. Debtor testified that the inclusion of his First and Second Cases in his credit report hinders his ability to obtain employment within the financial services industry. Debtor's principle reason for seeking expungement is to remove the bankruptcy filings from his credit report which, according to Debtor, will increase his chances of gaining employment within the financial services industry.

## LAW & ANALYSIS

Bankruptcy expungement is an extraordinary remedy. Ultimately, an expungement order removes information regarding a bankruptcy filing from the public record as if the filing had not occurred. Expungement of a bankruptcy case is a rare event that is granted with the "greatest prudence of bankruptcy judges." *In re Buppelmann*, 269 B.R. 341, 341 (Bankr. M.D. Pa. 2001).

There is no explicit statutory authority that allows a bankruptcy court to order an expungement of a debtor's prior case. Courts that have considered the issue have garnered implicit authority from 11 U.S.C. §§ 105 and 107(b)(2).[2] In *Buppelmann*, the court cited § 105 as providing courts with certain equitable powers, including expungement. *Buppelmann*, 269 B.R. at 341. In elaborating on the issue of expungement, the court in *Buppelmann* noted that although expungement seems converse to one of the overarching goals of the Bankruptcy Code—public access to records—bankruptcies filed as a result of fraud or lack of authorization should not result in hardship to individuals who fall victim to an improper filing. *Id*. In *In re Whitener*, 57 B.R. 707, 709 (Bankr. E.D. Va. 1986), the court found that the debtor's request for expungement invoked § 107, which allows the court to protect individuals from scandalous or defamatory filings.

Notwithstanding the issue of which provision of the Bankruptcy Code authorizes expungement, courts are generally in agreement that a fraudulent or otherwise unauthorized filing constitutes grounds for expungement. This Court has deemed expungement appropriate where the evidence shows that a debtor's attorney filed a bankruptcy petition without the debtor's authorization. *See In re Storay*, 364 B.R. 194 (Bankr. D.S.C. 2006); *In re Brock*, C/A No. 04–08646–JW, slip op. (Bankr. D.S.C. Oct. 13, 2004). In *Storay*, the debtors signed a blank petition after meeting with an attorney to discuss filing bankruptcy, but never authorized their

---

[2] Further reference to the Bankruptcy Code, 11 U.S.C. § 101 *et seq*, shall be by section number only.

3

attorney to file the petition. Although this Court recognizes the general presumption that a signed petition indicates that the party filing the petition has authority to do so, this Court in *Storay* found that the debtors rebutted this presumption by providing credible and convincing testimony that they did not authorize their attorney to file the petition. *Storay*, 364 B.R. at 196. This conclusion was buttressed by inconsistencies in the actual petition signed by debtors and the electronic petition filed by the debtors' attorney. *Id*. at 196.

In *Brock*, the debtor's spouse never requested that a bankruptcy case be filed and never met with or sought representation from the attorney who ultimately filed the case. *Brock*, C/A No. 04–08646–JW, slip op. at 3. Despite this, the debtor's attorney filed several documents containing the electronic signature of the debtor without having first obtained the original signature of debtor and without having any authority to file documents on debtor's behalf. *Id*. These cases are distinguishable from the facts presented to the Court by Debtor in this matter, because unlike the debtors in *Storay* and the debtor's spouse in *Brock*, Debtor intended to be in bankruptcy upon the filing of his First and Second Cases. It is clear from the evidence provided by Debtor that the filings in both Cases were not fraudulent or unauthorized. This Court finds that the First and Second Case were filed by Debtor intentionally and purposefully and were, therefore, authorized.

Furthermore, nothing in Debtor's two case filings is scandalous or defamatory. A defamatory statement, in this context, is defined as a "statement tending to harm a person's reputation, usually by subjecting the person to public contempt, disgrace, or ridicule, or by adversely affecting the person's business." *In re Dick*, C/A No. 05–80347–BJH, slip op. at 4 (Bankr. N.D.T.X. May 19, 2006) (quoting Black's Law Dictionary 449 (8th ed. 2004)). A scandalous statement is a "statement that is both grossly disgraceful or defamatory and irrelevant

4

to the action or defense." *Id*. A bankruptcy filing can be considered defamatory if the filing will result in harm to a debtor's business or reputation. *Id*. In *Dick*, the debtor's identity was stolen and used to file a petition for relief under Chapter 13. The court found that the debtor did not authorize the filing and that the petition was filed fraudulently by another party. Even under these circumstances the court did not deem expungement as a proper remedy.

Debtor has not provided evidence showing he was a victim of identity theft, nor has he shown that his petitions for relief under Chapter 13 were filed fraudulently by another party. Debtor admits to filing the petitions in his First and Second Cases. Debtor does not dispute that the filings in his First and Second Case and the information contained therein is truthful. The publishing of truthful information regarding Debtor's bankruptcy filings should not be blocked simply because the same truthful information is supposedly hindering Debtor's ability to obtain employment within his chosen industry and profession.[3]

While it is true that certain adverse effects of Debtor's filings remain, it is clear that Debtor derived benefits from filing the First and Second Case, primarily in the form of receiving the protection of automatic stay. As a result of both filings, Debtor was able to protect his home from foreclosure for an extended period of time. The Court is aware that banks have been accused of mishandling consumer mortgages and that payments similar to the one purportedly received by Debtor have been made under the National Mortgage Settlement. While the Court is

---

[3] The Fair Credit Reporting Act ("FCRA") governs the activities of credit reporting agencies. Under the FCRA, *the consumer* is responsible for notifying credit reporting agencies that any bankruptcy filings listed within his report are fraudulent or otherwise in dispute. *See* 15 U.S.C. § 1681i(a)(1)(A). Upon receiving the consumer's notification, the credit reporting agency is required by the FCRA to either open an investigation and indicate that the information is disputed or delete the disputed information within thirty days of receiving the consumer's notice. *See id.*; *see also* 15 U.S.C. § 1681i(a)(5)(A)(i)(ii). It appears that certain credit reporting agencies have permissibly included Debtor's prior bankruptcy filings in their reports. If Debtor so desires, he may choose to explore his options under the FCRA. This Court, on the other hand, is bound by the Bankruptcy Code which it must apply to the facts and evidence as presented by Debtor. Even if the extraordinary remedy of expungement were to be deemed appropriate under the existing facts, the Court is unsure as to whether such a remedy would carry with it a requirement that credit reporting agencies remove from their reports notations regarding Debtor's First and Second Cases.

5

sympathetic of Debtor's current plight as to employment prospects, Debtor has not shown that the filing of his First and Second Cases was anything other than Debtor's voluntary action. The facts and evidence presented by Debtor in regard to the filing of his First and Second Cases do not support a finding of defamatory, scandalous, fraudulent, or otherwise unauthorized activity, as is necessary for this Court to consider expungement as a remedy.

Therefore, after receiving testimony and carefully considering the evidence presented, the Court finds that Debtor is not entitled to expungement of his First or Second Case.[4] It is hereby ORDERED that Debtor's Motion to Expunge Bankruptcy C/A Nos. 11–04267–JW and 11–05931–JW is **DENIED**.

**AND IT IS SO ORDERED.**

---

[4] This Court is aware of alternative remedies courts have granted debtors in lieu of expungement. *See In re Dick*, C/A No. 05–80347–BJH, slip op. at 4 (Bankr. N.D.T.X. May 19, 2006) (declining to issue order of expungement and instead directing the Clerk of Court to flag debtor's filing as "Unauthorized Bankruptcy Filing—Identity Theft Victim"); *see also In re Whitener*, 57 B.R. 707, 710 (Bankr. E.D. Va.1986) (declining to issue order of expungement but instead declaring debtor's bankruptcy petition "null and void"). After considering these remedies, this Court finds them inappropriate based on the facts surrounding Debtor's filings.